U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED - LAKE CHARLES

AUG 26 2008

ROBERT H. SHEMWELL, CLERK
BY _____
         DEPUTY

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAKE CHARLES DIVISION

| UNITED STATES OF AMERICA | : | DOCKET NO. 2:05 CR 20084-16 |
|---|---|---|
| VS. | : | JUDGE MINALDI |
| MARIA GUADALUPE RAMOS | : | MAGISTRATE JUDGE KAY |

### MEMORANDUM RULING

Presently before the court is a Motion to Enforce the Plea Agreement Offer [doc. 626] and a Motion to Reimburse Travel Expenses [doc. 627] filed by the defendant, Maria Guadalupe Ramos ("Ramos").

A change of plea hearing was scheduled for June 13, 2008. At the hearing, the defendant was hesitant to enter a guilty plea as she alleged that the plea agreement had been changed. The court continued the hearing to secure and examine a chronology of the plea negotiations.

Both AUSA Brett Grayson ("Grayson") and the defendant's attorney, Elia Cornejo Lopez ("Lopez") submitted chronologies of the plea negotiations. Mr. Grayson summarized the negotiations and Ms. Lopez sent what purports to be the actual e-mails between the two attorneys. In examining these transmissions, it appears that Mr. Grayson did notify Ms. Lopez very early in the negotiations that anything other than a straight plea to Misprision would require supervisor approval.

A review of the correspondence indicates that this was a series of miscommunications from the onset. Although Mr. Grayson said from the second e-mail that anything other than a straight plea

to Misprision would require supervisor approval, Ms. Lopez, for whatever reason, did not take this statement at face value. Ms. Lopez sent amendments to the proposed plea agreement to which Mr. Grayson did not respond. It is clear that Ms. Lopez knew, or should have known, that there was no meeting of the minds as to the plea agreement before traveling to Lake Charles with her client. So sanctions of making the Government reimburse Ms. Lopez's travel expenses is not warranted.

The law is well-settled that if the court accepts a defendant's guilty plea entered in reliance on a plea agreement or other promise that is then not honored by the Government, the defendant's due process rights are violated. *Mabry v. Johnson*, 467 U.S. 504, 507, 104 S.Ct. 2543, 81 L.Ed.2d 437 (1984); *see also Santobello v. New York*, 404 U.S. 257, 261-62, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971). However, it is equally well-settled that no detriment, and thus no due process violation, occurs until the guilty plea is accepted by the district court. *Mabry*, 467 U.S. at 507, 104 S.Ct. 2543 ("A plea bargain standing alone is without constitutional significance; in itself it is a mere executory agreement which, until embodied in the judgment of a court, does not deprive an accused of liberty or any other constitutionally protected interest."). In the instant case, the district court did not accept Ramos's guilty plea. Therefore, specific performance of Ramos's plea agreement is not available on due process grounds under *Mabry*.

Absent the district court's formal acceptance of the defendant's guilty plea or an express provision in the plea agreement requiring certain pre-plea performance, courts have consistently declined to recognize any bases for detrimental reliance by the defendant that would warrant specific performance of the plea agreement on due process or any other grounds. The Eighth Circuit reaffirmed the reasoning originally adopted from the Fifth Circuit:

"[T]he realization of whatever expectations the prosecutor and defendant have as a

2

result of their bargain depends entirely on the approval of the trial court. Surely neither party contemplates any benefit from the agreement unless and until the trial judge approves the bargain and accepts the guilty plea. Neither party is justified in relying substantially on the bargain until the trial court approves it. We are therefore reluctant to bind them to the agreement until that time. As a general rule, then, we think that either party should be entitled to modify its position and even withdraw its consent to the bargain until the plea is tendered and the bargain as it then exists is accepted by the court."

*McGovern*, 822 F.2d at 744 (quoting *United States v. Ocanas*, 628 F.2d 353, 358 (5th Cir.1980)); *see also United States v. Wessels*, 12 F.3d 746, 753 (8th Cir.1993); *United States v. Walker*, 927 F.2d 389, 390 (8th Cir.1991) ("Whatever benefits the parties intend to reap as a result of this [plea] agreement are contingent entirely upon the approval of the trial court."). The Eighth Circuit continues to recognize that this reasoning does not apply in "cases [that] either: (1) do not deal with plea agreements that required the court's acceptance under Rule 11," such as agreements that promise immunity from prosecution in return for testimony or cooperation, "or (2) involve the breach of an agreement after the court has accepted the defendant's guilty plea." *McGovern*, 822 F.2d at 745. Therefore, before the guilty plea is accepted, either party may withdraw from the plea agreement. *U.S. v. Norris*, 486 F.3d 1045, 1048 -1049 (C.A.8 (Mo.), 2007).

Further, because there is no suggestion that the government gained any unfair advantage through any promise that might have been made in the first proposed agreement, the government cannot be bound by any stipulation contained in that document. *United States v. Carreon*, 256 Fed.Appx. 870 (8th Cir. 2007).

Although the Court does not participate in the negotiation of Plea Bargain Agreements, it has a duty to supervise such agreements, insofar as it must make a determination that they are entered into voluntarily and knowingly and without duress or coercion. As a part of this duty to assure the

3

integrity of the negotiation process, the Court likewise has a duty to enforce such agreements which it considers to be valid, although it is not bound to accept such agreements. The United States Supreme Court in *Santobello v. New York*, 404 U.S. 257, 260, 92 S.Ct. 495, 498, 30 L.Ed.2d 427 (1971) recognized that plea bargaining "is an essential component of the administration of justice." It is this process, as well as the agreement of the parties now before the Court, which this Court seeks to uphold.

The pertinent e-mail chronology is as follows:

| | |
|---|---|
| 1/17/08 | Mr. Grayson offers Ramos opportunity to plead to Misprision. |
| 1/19/08 | Ms. Lopez asks if this would require jail time as Ms. Lopez has no criminal history. |
| 1/20/08 | Mr. Grayson responds that this would be up to the judge. |
| 1/18/08 | Mr. Grayson advises Ms. Lopez that if Ramos wants **anything other than "the original plea offer", if he agrees to it, he must then prepare a Memorandum to his supervisors justifying a disposition as an exception to the Ashcroft Memorandum...without "my supervisor's approval** I will be forced to take your client to trial." "The original plea offer" could refer back to 1/17/08 offer of Misprision or, Mr. Grayson argues that it refers to a plea to Count 2 of the Superseding Indictment, Conspiracy to Commit Money Laundering (except the SS Indictment was not filed until 3/11/08),. Either way, Ms. Lopez wanted more than a plea to the charge. She was negotiating for probation and no forfeiture of Ramos's home. Any of those stipulations clearly would have required supervisory approval.[1] |
| 2/19/08 | Mr. Grayson tells Ms. Lopez that he is sure that Ramos would receive probation from Judge Minaldi for a plea to Misprision, "especially if I recommended probation." (At this point Mr. Grayson does not reiterate that this will require approval from his supervisors)[2]. |
| 2/22/08 | Mr. Grayson offers two options, one being a plea to Misprision with a recommendation of probation by the government (no mention of needed approval by supervisors). |

---

[1] There are then several e-mails where Ms. Lopez attempts to negotiate pretrial diversion and forfeiture of everything but her house, to which Mr. Grayson does not agree.

[2] This is followed by several more e-mails where Ms. Lopez argues for pretrial diversion and Ms. Lopez keeping her house, to which Mr. Grayson does not agree.

4

| | |
|---|---|
| 2/25/08 | Mr. Grayson reiterates the two options. The first included provision that they would "consider pretrial diversion" but Ms. Lopez must debrief and give valuable info that can be used against someone else. |
| 2/25/08 | Ms. Lopez asks if Ramos can plead to Misprision and keep the house. |
| 2/25/08 | Mr. Grayson says she can keep her house if she leads them to more valuable property. |
| 2/25/08 | Ms. Lopez offers a plea of no contest to Misprision and wants a trial on the forfeiture. |
| 2/25/08 | Mr. Grayson says no. |
| 2/26/08 | Mr. Grayson says that if Ms. Lopez will plead to Money Laundering Conspiracy, **he will ask his supervisors** to let her keep the house. |
| 2/26/08 | Ms. Lopez informs Mr. Grayson that Ramos will plead to Misprision with a Govt recommendation of Probation. |
| 2/27/08 | Mr. Grayson says he will draft the plea agreement and once Ms. Lopez agrees, **he must send it to his superiors. If she or his supervisors make any changes, negotiations are still open.** |
| 2/27/08 | Ms. Lopez responds "great I'll wait for the first draft" |
| 3/3/08 | Mr. Grayson sends plea agreement. |
| 3/14/08 | Ms. Lopez responds that the plea agreement does not include the Govt recommendation of Probation as agreed. "The government must recommend probation." |
| 3/14/08 | Mr. Grayson - tell me where you want it. Once everything is okay with you and both Ms. Lopez and Ramos sign it, **he will seek authorization from his supervisors.** |
| 3/14/08 | Mr. Grayson asks Ms. Lopez to draft the Plea Agreement and factual basis and he will submit to his supervisors. |
| 3/14/08 | Ms. Lopez sends revised agreement |
| 3/15/08 | Mr. Grayson makes changes. He says that if they are okay with Ms. Lopez, **he will send to his supervisors.** |
| 3/17/08 | Mr. Grayson makes changes |
| 3/19/08 | Ms. Lopez sends revised agreement. |
| 3/25/08 | Ms. Lopez sends Mr. Grayson copy of letter sent to Judge Minaldi waiving arraignment on superseding indictment. |
| 3/26/08 | Mr. Grayson advises Ms. Lopez that her representations to the Judge are not accurate as plea negotiations are not complete since they are an exception to the Ashcroft Memorandum and **he has not received approval from his superiors.** |
| 3/26/08 | Mr. Grayson advises Ms. Lopez for the first time that he is not authorized to enter into plea in which he recommends probation. |

5

| | |
|---|---|
| 3/28/08 | Mr. Grayson sent revised plea agreement. |
| 3/30/08 | Ms. Lopez advises that the plea agreement is accepted. Factual basis is being drafted. |
| 3/31/08 | Ramos signed the revised plea agreement and returned the document to Mr. Grayson. |
| 4/2/08 | Mr. Grayson revised agreement again accusing Ms. Lopez of inserting language. Mr. Grayson tells Ms. Lopez NOT to have her client sign. He will have original packet in his possession on morning of plea. |
| 4/2/08 | Ms. Lopez protests that she did not change the plea agreement. She says that her client signed what he had sent. |
| 4/7/08 | Ms. Lopez advises that the latest revisions are in the mail. The plea is set for May 16. |
| 4/7/08 | Mr. Grayson says he will not use anything Ms. Lopez mails. He will provide a plea packet for her and her client to sign immediately before court. |
| 4/8/08 | Ms. Lopez says that she sent him his plea documents unchanged. She and her client accepted them. Ms. Lopez is distressed that Mr. Grayson is accusing her of making changes that she did not make. She claims that he is trying to change the agreement yet again. |
| 4/8/08 | Mr. Grayson says no plea agreement with recommendation of probation and no extra points. He doesn't care what she and her client signed. He hasn't signed it, so they have no agreement. |
| 4/8/08 | Mr. Grayson advises Ms. Lopez that until the court has accepted the guilty plea, either side can withdraw. He admits that he missed the revisions that she added in response to his offered plea agreement (he had asked her to draft revisions). Mr. Grayson states that "I will never again accept plea agreements drafted by a defense attorney because I am unable to quickly and with certainty ascertain what changes are being proposed. |
| 4/9/08 | Ms. Lopez again says that she accepted the documents that Mr. Grayson sent. She asks what he is accusing her of changing. |
| 4/9/08 | Mr. Grayson says that he removed the recommendation of probation "that I had not seen" and an extra reduction in guidelines "you had inserted that I had not noticed." |
| 4/10/08 | Mr. Grayson sends "final plea package." Advises that she will be given the original thiry minutes before court for her signature. |
| 4/21/08 | Ms. Lopez advises that there "are changes from the ones Mr. Mr. Grayson sent with his offers and proposed and the things that we accepted." |
| 4/22/08 | Laura (Mr. Grayson's secretary) says she will let Mr. Grayson know. |

The law is settled that either party may withdraw from plea negotiations at any time prior to acceptance by the court. Still, the court also considers it counterproductive for the Government to

6

spend months negotiating without prior approval of the tendered offer.

In *U.S. v. Smith*, 648 F.Supp. 495, 498 (S.D.Tex.,1986), it was uncontroverted that the Government and the Defendants had entered into a Plea Bargain Agreement. The court reasoned that plea agreements are contractual in nature. *United States v. Ocanas*, 628 F.2d 353 (5th Cir.1980). However, Plea Bargain Agreements entail much more than a mere offer and acceptance. Unlike contracts, Plea Bargains involve a myriad of collateral considerations such as expectations of fundamental fairness by the Defendants, efficient administration of justice, and the integrity of the Government's promises. The Government cited *Ocanas* for the proposition that either party, the Government or the Defendant, should be entitled to modify its position and even withdraw its consent to the agreement at any time prior to the moment when the plea is tendered and the agreement is accepted by the Court. *Ocanas*, 628 F.2d at 358. The Fifth Circuit in *Ocanas* did enunciate the above proposition as being a "general rule". *Ocanas*, 628 F.2d at 358.

The Ramos case differs, however. A thorough review of the e-mails between Ms. Lopez and Mr. Grayson indicates that no meeting of the minds occurred. The plea negotiations essentially consisted of a series of miscommunications and misunderstandings. There is no evidence of a mutually acceptable plea agreement at any time in this process. Therefore, specific performance of the defendant's version is not warranted.

In her "Motion to Enforce the Plea Agreement" Ramos argues that she relied upon plea negotiations to her detriment. That detriment is the ability to be represented by Ms. Lopez at trial as Ms. Lopez has been elected to the state bench and cannot represent her after January 1, 2009. This argument is not persuasive as the trial has been continued until after that date and Maria Ramos is

only one of many defendants. She would not have gone to trial earlier even in the absence of the plea negotiations. The e-mails submitted do not justify enforcing the plea agreement without the Government's concurrence. Accordingly, the defendant's Motion to Enforce the Plea Offer will be denied.

Lake Charles, Louisiana, this 25 day of August, 2008.

PATRICIA MINALDI
UNITED STATES DISTRICT JUDGE